UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NASSOR MOORUTS BEY, et al.,

     Plaintiffs,

v.                                 CASE NO. 8:15-cv-545-T-23EAJ

DAVID GEE, et al.,

     Defendants.

_____/

## ORDER

Both appearing *pro se*, Nassor Mooruts Bey and his wife, Nura A.N.H. Washington Bey, sue Tampa police officers Stephen Hiles and W.C. Harrison, the City of Tampa, Mayor Bob Buckhorn, and Hillsborough County Sheriff David Gee for an array of federal and state-law claims arising from a traffic stop and Bey's arrest. The defendants move (Doc. 42, 44) to dismiss the plaintiffs' second amended complaint for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure. The plaintiffs move (Doc. 46, 48) to strike the motions to dismiss.

## BACKGROUND

The plaintiffs' complaint alleges the following "facts" which are (momentarily) the governing facts, but only for the purpose of evaluating the merits of a motion to dismiss.

The plaintiffs claim the status of "Aboriginal/Indigenous Natural Beings" and claim "Moorish American" nationality.  (Doc. 36 at 2, ¶ 24)  Invoking a "Constitutional Right to Travel," the plaintiffs notified Mayor Buckhorn and Sheriff Gee that vehicles displaying "Aboriginal/Indigenous Moorish American tags" must be placed on the "Do Not Stop – Do Not Detain List."  (Doc. 36 at ¶¶ 9–14) Nonetheless, on March 3, 2015, Bey was stopped while driving a truck with Moorish-American tags.  (Doc. 36 at ¶ 14)

Hiles interrogated Bey "about not having plates and questioned [him] about a driver's license."  (Doc. 36 at ¶¶ 15–17)  Bey explained "that he did not need a driver's license because he had a right to travel."  (Doc. 36 at ¶ 17)  "As a courtesy," Bey produced his "Aboriginal/Indigenous Moorish/American Nationality Identification."  (Doc. 36 at ¶ 18)  Hiles looked at the identification card and ordered Bey out of the vehicle.  (Doc. 36 at ¶ 19)  Bey "replied to the effect that he didn't do anything wrong, and that HILES will have to take him out."  (Doc. 36 at ¶ 19)  Hiles "actually put his hands on Nassor Bey and bound him with hand cuffs and proceeded to search all through Nassor Bey's pockets."  (Doc. 36 at ¶ 19)  In the meantime, "other police" "ransack[ed] and search[ed]" the truck.  (Doc. 36 at ¶ 22)

Hiles charged Bey with violations of Section 322.212(1)(a), Florida Statutes (prohibiting unauthorized possession of a driver license or identification card) and Section 843.02, Florida Statutes (prohibiting obstruction of an officer without violence).  (Doc. 36 at ¶¶ 20, 28)  Hiles allegedly failed to advise Bey of his rights and

produced no arrest or search warrant.  (Doc. 36 at ¶ 21)  Police seized the truck and demanded $800.00 for its return.  (Doc. 36 at ¶ 25)  Harrison "signed the document to steal" the truck.  (Doc. 36 at ¶ 26)

The complaint further alleges that on the day of his arrest, Bey was "chained to gurney rails and transported to TAMPA GENERAL HOSPITAL against his verbal non-consent."  (Doc. 36 at ¶ 35)  Medical personnel "subjected" Bey to solitary confinement, psychological experiments, interrogations, surveillance, and treatment.  (Doc. 36 at ¶¶ 34–42)  Bey was denied a telephone call to the "Moorish consul," he was "detained without a judicial determination of probable cause," and he was held on a $2,500.00 bond.  (Doc. 36 at ¶¶ 27, 28, 31, 33)  On March 9, 2015, Bey was released from solitary confinement.  (Doc. 36 at ¶ 43)  The state attorney ultimately filed a Notice of *Nolle Prosequi*.  (Doc. 36 at ¶ 45)

On March 11, 2015, the plaintiffs initiated (Doc. 1) this action.  On March 19, 2015, the plaintiffs amended (Doc. 8) the complaint.  An April 23, 2015 order (Doc. 35) allows the plaintiffs a second opportunity to amend their complaint and requires the plaintiffs to state each claim in a separate count, to omit any claim based on a statute creating no private right of action, and to incorporate within each count only the essential facts.

On May 20, 2015, the plaintiffs filed (Doc. 36) the second amended complaint.  Only marginally improved, the complaint continues to exhibit features of a shotgun pleading.  *See Weiland v. Palm Beach Cnty. Sheriff's Office*, ___ F.3d ___, 2015

WL 4098270, at *4–5 (11th Cir. July 8, 2015) (describing four types of shotgun complaints identified in published decisions).  Seven of the nine claims are pleaded against all defendants, frequently without meaningful distinction among the defendants.  (*E.g.*, Doc. 36 at ¶¶ 44, 59, 52, 63, 67, 83)  Adding to the confusion, the plaintiffs incorporate the fifty-three paragraphs of general factual allegations into each of the first five counts.  Also, the plaintiffs persist in alleging several constitutional violations in a single count.

Notwithstanding these deficiencies, the pleading of a *pro se* litigant warrants a lenient construction.  Accordingly, the nine counts are assessed under Rule 12(b)(6) for facial plausibility.  A passing reference in the complaint to a statute, constitutional provision, or treaty, which is not pleaded as the basis for a distinct claim (*e.g.*, Doc. 36 at 3, 21), receives no attention.

## DISCUSSION

### 1. Officers Hiles and Harrison

#### A. 42 U.S.C. §§ 1981, 1983, 1985(3)

Suing under 42 U.S.C. §§ 1981, 1983, and 1985(3), the plaintiffs assert violations of the Fourth Amendment (Count 1), the Fifth Amendment (Count 2), the Sixth Amendment (Count 3), and the Eighth Amendment (Count 4).  As an initial matter, the plaintiffs fail to state a plausible claim under Section 1981 or Section 1985(3).

A Section 1981 claim requires a showing that (1) Bey is a member of a racial minority, (2) Hiles and Harrison intended to discriminate on the basis of race, and (3) "the discrimination concerned one or more of the activities enumerated in [Section 1981]." *Kinnon v. Arcoub, Gopman & Assoc., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007). Section 1981 creates no independent claim for relief, and a Section 1981 claim must be brought under Section 1983. *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).

A Section 1985(3) claim requires that:

> (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). "The second element requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (internal quotation marks omitted). Although the plaintiffs allege that the Tampa Police tampered with video evidence and falsified a police report (Doc. 36 at ¶¶ 25, 50, 61), the plaintiffs fail to allege the remaining elements of a conspiracy claim.

As to the Section 1983 claims, the plaintiffs sue Hiles and Harrison in their official and individual capacities. (Doc. 36 at ¶ 3) The official-capacity claims, correctly characterized, are claims against the City of Tampa. *Cook v. Randolph Cty.*,

573 F.3d 1143, 1149 (11th Cir. 2009).  Because the City is named as a defendant, the

official-capacity claims against Hiles and Harrison are redundant.  *Busby v. City of*

*Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

In the individual-capacity claims, the plaintiffs must establish that Bey was

"deprived of a federal right by a person acting under color of state law." *Griffin v. City*

*of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  For the reasons that follow, the

plaintiffs plead no plausible violation of a federally-protected right.  As a result, the

officers' qualified-immunity arguments warrant no additional analysis.

### Fourth Amendment (Count 1)

The Fourth Amendment guarantees "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and

seizures." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (stating that the protection of

the Fourth Amendment applies to a state under the Fourteenth Amendment).  In

Count 1, the plaintiffs challenge the traffic stop, arrest, and search.  (Doc. 36 at

¶¶ 48–49)

A traffic stop comports with the Fourth Amendment if probable cause or

reasonable suspicion supports the stop. *United States v. Harris*, 526 F.3d 1334, 1337

(11th Cir. 2009);*United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

Probable cause exists if "the facts and circumstances within the officer's knowledge,

of which he or she has reasonably trustworthy information, would cause a prudent

person to believe, under the circumstances shown, that the suspect has committed, is

committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435

(11th Cir.1998) (internal quotation marks omitted).  The existence of probable cause

is determined objectively "without regard to the subjective beliefs of law enforcement

officers." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997).

At the time of the traffic stop, Bey was driving a truck with

"Aboriginal/Indigenous Moorish American tags."  (Doc. 36 at ¶ 14)  Therefore,

Hiles possessed probable cause to believe that Bey violated Section 316.605(1),

Florida Statutes, which requires both that a vehicle "display the license plate . . .

assigned to it by the state" and that "[n]o license plates other than those furnished by

the state shall be used." *See United States v. Boyd*, 388 Fed. Appx. 943, 947 (11th Cir.

2010) (holding that an officer had probable cause to stop a vehicle with an obscured

tag).

An officer may "arrest a suspect without a warrant if there is probable cause to

believe that the suspect has committed or is committing an offense." *United States v.

Lyons*, 403 F.3d 1248, 1253 (11th Cir. 2005) (internal quotation marks omitted).  The

existence of probable cause is an absolute bar to a Section 1983 claim for false arrest.

*Rankin,* 133 F.3d at 1435.

After Bey was stopped, Hiles instructed Bey to keep his hands on the wheel

and questioned Bey about his license plates and his driver license.  (Doc. 36 at ¶ 17)

This brief, initial detention required no probable cause. *United States v. Torres-Bonilla*,

556 Fed. Appx. 875, 879-80 (11th Cir. 2014); *see also Rodriguez v. United States*,

135 S.Ct. 1609, 1615 (2015) (stating that an officer may perform unrelated checks during an otherwise lawful traffic stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance").

Bey's presenting an "Aboriginal/Indigenous Moorish/American Nationality Identification" card (Doc. 36 at ¶ 18) constituted probable cause for Hiles to arrest Bey for a violation of Section 322.212(1)(a), Florida Statutes, which prohibits possession of "any instrument in the similitude of a driver license or identification card unless possession by such person has been duly authorized by the [Department of Highway Safety and Motor Vehicles]." *See State v. Johnson*, 414 So. 2d 18, 19 (Fla. 2d DCA 1982) (holding that an officer had probable cause for arrest when the defendant tendered a false driver license). Similarly, Bey's refusal to exit his truck (Doc. 36 at ¶ 19) created probable cause to arrest Bey for non-violent obstruction. *See* So. 2d 779, 781 (Fla. 5th DCA Dist. 1991).

In the illegal-search claim, the plaintiffs allege that after Bey was handcuffed Hiles "search[ed] all through Nassor Bey's pockets." (Doc. 36 at ¶ 19) Because the search was incident to a lawful arrest, no Fourth Amendment violation exists. *United v. Williams*, 731 F.3d 1222, 1232 (11th Cir. 2013). Further, the plaintiffs allege that Bey "saw the other police ransacking and searching all through the 2001 Ford truck" (Doc. 36 at ¶ 22), but the plaintiffs allege no participation by Hiles or Harrison.

Although pleading no additional Fourth Amendment violations in Count 1, the plaintiffs (improperly) incorporate the preceding factual allegations. (Doc. 36 at ¶ 46) Within the general allegations, the plaintiffs assert that Hiles "bound [Bey] with hand cuffs" and that Bey "was violated by assault and battery." (Doc. 36 at ¶ 19) To the extent that the plaintiffs claim the officers used excessive force, the right to arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect [the arrest]." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (internal quotation marks omitted). "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez*, 280 F.3d at 1351.

Within the incorporated allegations, the plaintiffs maintain that Harrison "signed the document to steal" Bey's truck and that Hiles did not return "Bey's Nationality card, his Moorish American Heritage School card, or his Constitutional Right to Travel card." (Doc. 36 at ¶¶ 22, 26) A decision to impound a vehicle is justified when "made in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (internal quotation marks omitted); *see also Lindsey v. Storey*, 936 F.2d 554, 558 n.3 (11th Cir. 1991) (noting that a claim challenging an impoundment was "meritless" if the only authorized driver was placed under arrest). Likewise, the seizure of Bey's identification cards was reasonable if supported by probable cause or, under certain circumstances, reasonable suspicion. *See Lindsey*,

936 F.2d at 558 (holding that the lower standard of reasonable suspicion is required

if the seizure is "brief and minimally intrusive").  The plaintiffs state no plausible

Fourth Amendment claim in connection with the seizure of Bey's truck and

identification cards.

### Fifth Amendment (Count 2)

In Count 2, the plaintiffs allege violations of Bey's Fifth Amendment due

process rights.  (Doc. 36 at ¶¶ 55–57)  The Fifth Amendment protects a citizen's

rights against infringement by the federal government, and the Fourteenth

Amendment applies to the states.  *Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir.

1989).  Because the complaint pleads no separate Fourteenth Amendment claim,

Count 2 is construed as pleaded under the Fourteenth Amendment.

The Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any

person of life, liberty, or property, without due process of law."  "The Due Process

Clause provides two different kinds of constitutional protections: procedural due

process and substantive due process."  *Maddox v. Stephens*, 727 F.3d 1109, 1118

(11th Cir. 2013).

A procedural due process violation requires "(1) a deprivation of a

constitutionally-protected liberty or property interest; (2) state action; and

(3) constitutionally-inadequate process.  *Am. Fed'n of Labor & Cong. of Indus. Orgs. v.

City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011).  "[P]rocedural due process

violations do not become complete unless and until the state refuses to provide due

process." *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994).  Thus, where "an

adequate post-deprivation process is in place under state law, no federal procedural

due process claim exists."  *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1239

(11th Cir. 2003).

The substantive component of the due process clause protects "rights that are

'fundamental,' that is, rights that are implicit in the concept of ordered liberty."

*McKinney*, 20 F.3d at 1556.  A fundamental right "is protected against certain

government actions regardless of the fairness of the procedures used to implement

them."  *McKinney*, 20 F.3d at 1556.

Although they allege that Hiles violated Bey's "common law right to travel"

(Doc. 36 at ¶¶ 55–57), the plaintiffs fail to identify the deprivation of a protected

liberty interest, a property interest, or a fundamental right.  For instance, although

the state cannot withdraw a driver license without due process, the plaintiffs allege

no withdrawal and no other deprivation.  *Bell v. Burson*, 402 U.S. 535, 539 (1971);

*Burlinson v. Rogers*, 311 Fed. Appx. 207, 208–09 (11th Cir. 2008).  Also, although an

individual enjoys a fundamental right to engage in interstate travel, *Doe v. Moore*,

410 F.3d 1337, 1348 (11th Cir. 2005), no fundamental "right to drive" without a

license or a tag exists.  *Miller v. Reed*, 176 F.3d 1202, 1205-06 (9th Cir. 1999); *accord*

*Matthew v. Honish*, 233 Fed. Appx. 563, 564 (7th Cir. 2007).

To the extent the plaintiffs allege that the continued retention of Bey's truck or

personal property deprives Bey of a protected property interest, the plaintiffs fail to

allege that the state provides an inadequate post-deprivation remedy. *See Case v. Eslinger*, 555 F.3d 1317, 1330-31 (11th Cir. 2009) (holding that Florida law provided the plaintiff with an adequate post-deprivation remedy with respect to the continued retention of seized personal property); *Carcamo v. Miami-Dade County*, 375 F.3d 1104, 1105 (11th Cir. 2004) (declining to apply an exception to the *Parratt-Hudson* doctrine in a challenge to vehicle's impoundment).  To the extent the plaintiffs allege that Bey's incarceration deprived him of a liberty interest (Doc. 36 at ¶ 60), the claim fails because Hiles had ample probable cause to arrest Bey.  *Case*, 555 F.3d at 1330.

The plaintiffs allege that Bey was interrogated without a *Miranda* warning. (Doc. 36 at ¶ 59)  The failure to provide a *Miranda* warning "triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created."  *Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999).  To the extent the plaintiffs raise a substantive due process claim with respect to Bey's interrogation, they allege no conduct that "shocks the conscience."  *Carter v. DeKalb Cty.*, 521 Fed. Appx. 725, 730-31 (11th Cir. 2013).

Finally, any takings claim (Doc. 36 at ¶¶ 26, 60) falls short of plausibility. The Fifth Amendment guarantee that private property may not "be taken for public use, without just compensation" applies to the states through the Fourteenth Amendment.  *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).  At a minimum, a plaintiff must establish that his property was "taken" and "that there is no provision

to award him just compensation." *Eide v. Sarasota Cty.*, 908 F.2d 716, 720 (11th Cir.

1990); *Agripost, Inc. v. Miami–Dade Cty., ex rel. Manager*, 195 F.3d 1225, 1231

(11th Cir. 1999) (holding that, in order for a takings claim to be ripe, a plaintiff

"must allege either that the state law provides him no process for obtaining just

compensation . . . or that the state law appears to provide such process, but due to

state court interpretation, the process in inadequate").  Property taken through the

state's general police power is not "taken" for "public use." *Hoefling v. City of Miami*,

17 F. Supp. 3d 1227, 1245 (S.D. Fla. 2014).

### Sixth Amendment (Count 3)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the

accused shall enjoy the right to . . . be informed of the nature and cause of the

accusation . . . and to have the Assistance of Counsel for his defence."  *See Moon v.*

*Head*, 285 F.3d 1301, 1314 n.15 (11th Cir. 2002) (noting that the Sixth Amendment

applies to the states under the Fourteenth Amendment).  "The right to counsel

attaches once adversary judicial proceedings have been initiated against the

defendant . . . . by way of formal charge, preliminary hearing, indictment,

information, or arraignment." *United States v. Hidalgo*, 7 F.3d 1566, 1568–69

(11th Cir. 1993) (internal quotation marks omitted).

The plaintiffs allege that Bey "was refused an opportunity to call for help to

consult with his Moorish Consul by CITY OF TAMPA POLICE DEPARTMENT

defendants" and that "[t]he defendants did not inform [Bey] of the nature and cause

of the alleged accusations." (Doc. 36 at ¶¶ 63, 65)  Even if these allegations pertain to Hiles or Harrison, the plaintiffs allege no involvement by either officer after the right to counsel attached. *United States v. Gouveia*, 467 U.S. 180, 190 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest"); *Lumley v. City of Dade City*, 327 F.3d 1186, 1196 (11th Cir. 2003) ("All we have in this case is an arrest. Nothing had occurred to trigger [the plaintiff's] Sixth Amendment right to counsel."). Nor do the plaintiffs challenge the sufficiency of the charging document, the indictment, or the information. *See, e.g., United States v. Silverman*, 745 F.2d 1386, 1392–93 (11th Cir. 1984) (evaluating the sufficiency of an indictment).

### Eighth Amendment (Count 4)

The Eighth Amendment prohibits "[c]ruel and unusual punishments" of a prisoner, but the Fourteenth Amendment governs mistreatment of an arrestee or a pretrial detainee, such as Bey. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). A claim challenging the conditions of confinement requires an "extreme" condition that "poses an unreasonable risk of serious damage to his future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A plaintiff must show also that the defendant "acted with a sufficiently culpable state of mind" that amounts to deliberate indifference. *Chandler*, 379 F.3d at 1289–90.

The plaintiffs allege that the "CITY OF TAMPA POLICE defendants" imposed "extra judicial punishment" of interrogation, shackling, and non-consensual search. (Doc. 36 at ¶ 67) As already discussed, the plaintiffs plead no fact indicating

that Bey was unlawfully interrogated, arrested, or searched.  Further, the plaintiffs maintain that Bey was "denationalized" because in the arrest report Bey was identified as "black," rather than "Moorish American."  (Doc. 36 at ¶¶ 24, 68–69; Doc. 8-1 at 4)  The plaintiffs state no plausible claim on these facts.

The plaintiffs maintain that Bey suffered additional Eighth Amendment violations, including excessive bail, fines, charges, and lost wages, and "daily intrusive medical, psychological interrogation, experimentation, treatment surveillance, and solitary confinement imposed on him by force during wrongful incarceration."  (Doc. 36 at ¶ 67)  However, the plaintiffs allege no participation by Hiles or Harrison.

### Failure to train, supervise, and discipline (Count 5)

In Count 5, the plaintiffs attempt to impose municipal liability on the City of Tampa and Sheriff Gee.  The allegations within Count 5 raise no independent claim against Hiles and Harrison.

### B. State-law claims

### Intentional infliction of emotional distress (Count 6)

A claim for intentional infliction of emotional distress requires a plaintiff to allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007).  "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress;

and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995).  "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law." *Liberty Mut. Ins. Co.*, 968 So. 2d at 595.

The plaintiffs allege an "unlawful stop without probable cause; assault and battery, unlawful searching of body, false felony charges, false arrest, false imprisonment, seized/stolen personal property, denationalization," and falsification of evidence.  (Doc. 36 at ¶¶ 83, 84)  As explained earlier, the plaintiffs fail to plausibly allege that Hiles or Harrison acted unlawfully.  The plaintiffs' conclusory allegations otherwise fail to identify actionably outrageous conduct.  *See Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 865-66 (Fla. 3d DCA 2006) (holding that the plaintiff failed to state a claim for intentional infliction of emotional distress based on a false arrest); *Von Stein v. Brescher*, 904 F.2d 572, 584 (11th Cir. 1990) (reversing the denial of a motion for judgment notwithstanding the verdict on a claim for intentional infliction of emotional distress); *Sada v. City of Altamonte Springs*, 434 Fed. Appx. 845, 851 (11th Cir. 2011) (affirming summary judgment on a claim for intentional infliction of emotional distress because "any contact with [the plaintiff], and any injury therefrom, was incidental to a lawful arrest"); *Harper Cos., Inc. v. Scott, Royce, Harris, Bryan, Barra & Jorgensen, P.A.*, 656 So. 2d 627, 629 (Fla. 4th

DCA 1995) (holding a wrongful seizure of personal property insufficient to state a

claim for intentional infliction of emotional distress).

### Malicious prosecution (Count 8)

Malicious prosecution necessarily includes the "absence of probable cause

for the original proceeding." *Valdes*, 924 So. 2d at 866 n.1.  The plaintiffs allege that

Bey was falsely charged with both obstruction of an officer without violence and

possession of a forged driver license.  (Doc. 36 at ¶¶ 28, 95)  As explained above, the

plaintiffs fail to plead the absence of probable cause for Bey's arrest.[*]

### Defamation (Count 9)

A government official retains absolute immunity for a defamation committed

in connection with official duties, "[h]owever false or malicious or badly motivated"

the statement.  *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970) (internal quotation

marks omitted); *Albritton v. Gandy*, 531 So. 2d 381, 387 (Fla. 1st DCA 1988). "The

question of whether allegedly defamatory statements are absolutely privileged is one

of law to be decided by the court." *Stephens v. Geoghegan*, 702 So. 2d 517, 522

(Fla. 2d DCA 1997).

The plaintiffs allege that the statements in the arrest report actionably defamed

Bey.  (Doc. 36 at ¶¶ 97–98)  However, the preparation of an arrest report falls

squarely within Hiles' and Harrison's official duties.  *Stephens*, 702 So. 2d at 522

---

[*] To the extent that the plaintiffs assert a federal malicious prosecution claim, the claim likewise fails. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

(holding that police officers' statements to media outlets were within the scope of the officers' duties because "[l]aw enforcement agencies routinely brief the media on matters of public concern"); *Lester v. City of Tavares*, 603 So. 2d 18, 19–20 (Fla. 5th DCA1992) (holding that the preparation of an arrest affidavit is an ordinary incident of arrest and that a misstatement in an affidavit creates no actionable defamation).

### Loss of consortium (Count 7)

Nura Bey's derivative claim for loss of consortium arises only "if her husband has a cause of action against the same defendant." *Gates v. Foley*, 247 So. 2d 40, 45 (Fla. 1971).  Because the plaintiffs state no viable claim against Hiles and Harrison, Nura Bey has no derivative claim for loss of consortium.  *Testa v. S. Escrow & Title, LLC*, 36 So. 3d 713, 715 (Fla. 1st DCA 2010).

## 2. City of Tampa

### A. 42 U.S.C. §§ 1981, 1983, 1985(3)

The plaintiffs sue the City in each civil rights claim.  However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  To impose Section 1983 liability on the City, the plaintiffs must allege "(1) that [Bey's] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d

1283, 1289 (11th Cir. 2004); *see also Weiland*, 2015 WL 4098270, at *11 (holding that

alleging a constitutionally offensive municipal custom or policy is a prerequisite to

alleging a Section 1985(3) conspiracy claim); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

701, 735–36 (1989) (holding that an allegation of a municipal custom or policy is

required to state a Section 1981 claim). Even if the plaintiffs successfully alleged an

underlying constitutional violation (and they have not), the plaintiffs identify no

municipal policy or custom that caused the challenged conduct.

"A policy is a decision that is officially adopted by the municipality, or created

by an official of such rank that he or she could be said to be acting on behalf of the

municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). The plaintiffs

cite Section 820 of the City's Standard Operating Procedure, which provides that

"[i]n any police-citizen encounter, officer safety should be of primary concern."

(Doc. 36 at ¶ 72) Consistent with the City's operating procedure, *Pennsylvania v.

Mimms*, 434 U.S. 106, 110 (1977), holds that officer safety is a "legitimate and

weighty" concern. The plaintiffs thus fail to allege an unconstitutional municipal

policy.

A custom is "a practice that is so settled and permanent that it takes on the

force of the law," and "it is generally necessary to show a persistent and wide-spread

practice." *McDowell*, 392 F.3d at 1290 (internal quotation marks omitted). The

plaintiffs' conclusory allegations regarding police abuses (Doc. 36 at ¶¶ 9, 80) fail to

plead facts that show a persistent or widespread pattern of civil rights violations

similar to the violations that Bey allegedly suffered.  *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (holding that the plaintiff failed to show a custom because he did not identify "factual situations that are substantially similar to the case at hand"); *accord Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). Therefore, the plaintiffs fail to allege an unconstitutional municipal custom.

Finally, the plaintiffs allege a "failure to train" (Doc. 36 at ¶ 74), which may "[i]n limited circumstances . . . rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).  To establish liability, a plaintiff must demonstrate that the municipality knew of the need to train and deliberately chose inaction.  *Gold*, 151 F.3d at 1350.  Deliberate indifference may be demonstrated by "[a] pattern of similar constitutional violations by untrained employees" or by showing "that the unconstitutional consequences of failing to train [are] patently obvious." *Connick*, 131 S.Ct. at 1360–61.

The plaintiffs allege that Mayor Buckhorn, a policymaker, knew that he was required to protect constitutional rights and "thus, the need for further functional training in this area of practical operation of upholding the National Republic Constitution is plainly obvious." (Doc. 36 at ¶¶ 77, 79)  Again, the plaintiffs' conclusory allegations fail to state a plausible basis for municipal liability.

**B. State-law claims**

The plaintiffs plead no plausible state-law claim against the City.  The claims for intentional infliction of emotional distress and malicious prosecution (Counts 6 and 8) are barred by sovereign immunity.  The defamation claim (Count 9) fails because there is no viable claim against Hiles or Harrison.  *Saxon v. Kneels*, 185 So. 2d 194, 196 (Fla. 4th DCA 1966).  Because the plaintiffs plead no other plausible claim, Nura Bey can state no derivative consortium claim.

**3. Sheriff Gee**

**A. 42 U.S.C. §§ 1981, 1983, 1985(3)**

The plaintiffs sue the Sheriff in both his individual capacity and his official capacity.  (Doc. 36 at ¶ 1)  The complaint includes no allegations that Sheriff Gee personally participated in the alleged civil rights violations.  Also, the plaintiffs fail to allege a basis for supervisory liability.  *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (discussing bases for supervisory liability).

The official-capacity claims against Sheriff Gee are the functional equivalent of a suit against Hillsborough County. *Vineyard v. Cnty. of Murray*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993).  However, the plaintiffs plead no plausible basis for municipal liability against the County.  At best, the plaintiffs conclusorily maintain that Sheriff Gee "showed deliberate indifference" and that "the need for further functional training . . . is plainly obvious."  (Doc. 36 at ¶¶ 78, 79)  No allegations of fact support this mere legal conclusion.

### B. State-law claims

The plaintiffs fail to plead a viable state-law claim against Sheriff Gee.  The plaintiffs fail to allege that Gee was personally involved in the underlying events.  (Doc. 36 at ¶¶ 83–86, 96–102)  Sovereign immunity bars the claim for intentional infliction of emotional distress (Count 6).  Sheriff Gee is not named as a defendant in the malicious prosecution claim (Count 8).  Sheriff Gee has absolute immunity for the defamation claim (Count 9), which is premised on allegedly false statements displayed on the Sheriff's website.  *See Crowder v. Barbati*, 987 So. 2d 166, 168 (Fla. 4th DCA 2008) (holding that a sheriff had absolute immunity for statements made on a website).  Nura Bey's derivative claim for loss of consortium (Count 7) fails in the absence of a viable claim against the Sheriff.

### 4.   Mayor Bob Buckhorn

The plaintiffs assert each of their nine counts against Mayor Buckhorn.  Apart from his involvement as a policymaker for the City, the plaintiffs allege no basis for his individual or his supervisory liability.  Also, the official-capacity claims are redundant.

### CONCLUSION

The motions to dismiss (Doc. 42, 44) are **GRANTED IN PART** and **DENIED IN PART**.  The Section 1983 claims against Hiles and Harrison are **DISMISSED WITH PREJUDICE** to the extent the plaintiffs allege (1) a Fourth Amendment violation based on the traffic stop, Bey's arrest, the search of Bey's

person, and the officers' use of force; (2) a Fifth Amendment or Fourteenth

Amendment violation based on a deprivation of procedural due process, a

deprivation of substantive due process, or the absence of a *Miranda* warning; (3) a

Sixth Amendment violation; (4) an Eighth Amendment or Fourteenth Amendment

violation based on conditions of confinement; and (5) a failure to train, supervise, or

discipline.  The state-law claims against Hiles and Harrison for intentional infliction

of emotional distress, malicious prosecution, and defamation are **DISMISSED**

**WITH PREJUDICE**.  The official-capacity claims against Hiles and Harrison are

**DISMISSED WITH PREJUDICE**.  All claims against Mayor Buckhorn are

**DISMISSED WITH PREJUDICE**.  The individual-capacity claims against Sheriff

Gee are **DISMISSED WITH PREJUDICE**.

No later than **AUGUST 25, 2015**, the plaintiffs may file a third amended

complaint.  The third amended complaint, if any, must contain only a short and

plain statement of the facts, that is, a statement of the time and the place that each

important event occurred, the participants in each event, and a brief description of

each event.  The complaint must incorporate into each count only the relevant

preceding paragraphs.  Each count must be limited to one set of facts and must be

brought against only the defendant(s) involved.  Any claims against the City of

Tampa or Sheriff Gee, in his official capacity, must include a factual and legal basis

for municipal liability.  The third amended complaint may not exceed twenty pages

and may not re-assert any claim that this order dismisses with prejudice.  Failure to

comply with this order will result in dismissal of the third amended complaint and this action without further notice.

The plaintiffs' motions (Docs. 46, 48) to strike are **DENIED**.

ORDERED in Tampa, Florida, on August 11, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE